533 So.2d 444 (1988)
Monroe GRIFFIN
v.
STATE of Mississippi.
No. 58040.
Supreme Court of Mississippi.
October 26, 1988.
*445 John R. Reeves, Debra L. Allen, Jackson, for appellant.
Edwin Lloyd Pittman and Mike Moore, Attys. Gen. by Billy L. Gore, Asst. Atty. Gen., Jackson, for appellee.
Before DAN M. LEE, P.J., and ROBERTSON and GRIFFIN, JJ.
ROBERTSON, Justice, for the Court:

I.
This case presents a problem we encounter all too often. The prosecution charges the accused with a serious felony, only to have the defense offer a version of the facts rendering the accused far less culpable and, most important, subject to a far lesser punishment. If the evidence be such that a reasonable jury might have found the facts as the defense suggests them to have been, the accused of right is entitled to have the jury consider that option and be instructed to that effect. Where, as here, the lesser offense instruction has been denied, we have no alternative but to reverse.

II.

A.
At approximately 11:15 on the evening of November 2, 1985, Hinds County Deputies Sweeny and Gray were patrolling an area in northern Hinds County. As they were driving down a deserted street near McLain Road, the deputies observed a station wagon with the right rear door opened parked along the lefthand side of the road. When they stopped to investigate, they observed a man beating a woman in the car. They also heard the woman scream "Please don't kill me."
The officers identified themselves and ordered the occupants to get out of the vehicle. At that point the man in the car sprung to the front seat and, lying prone across the seat, attempted to drive the station wagon away, one hand on the steering wheel, the other on the accelerator. After traveling twenty feet or so the station wagon came to rest in a rather deep drainage ditch. When the male occupant, Monroe Griffin, finally did get out of the station wagon, the police placed him under arrest. The police then interviewed the female occupant of the car, D.F., who claimed that she had been raped by Griffin.
How Monroe Griffin and D.F. came to that remote spot in Hinds County on the night of November 2, 1985 (and to the attention of Deputies Gray and Sweeny) *446 was at trial and is on appeal the central issue in this case. Two very contrasting stories were presented at trial. Having these well in mind is essential to understanding the outcome determinative issue on this appeal.
First, the prosecution's version.
D.F. testified that she went to visit a friend at around 7:00 p.m. on November 2. There were a number of people at her friend's house drinking gin and she joined them. The friend, Edna Davis, gave D.F. money and sent her to a liquor store to buy more gin. A man who was also present at the party, Monroe Griffin, offered to drive F. to the liquor store. F. stated that, instead of driving to the liquor store, Griffin took her directly to a deserted road in north Hinds County, pulled the car over to the shoulder of the road, forced her into the back seat and raped her. F. denied that she consented to have intercourse with Griffin. Regarding the time that these events took place, F. stated that it was 7:30 p.m. when she left Davis' house with Griffin. She was certain about the time. F. stated that Griffin drove her directly to the deserted location and her encounter with Griffin in the car lasted approximately twenty minutes.
On cross-examination, F. could not explain the vast discrepancies in time between her account of events and the police officer's testimony. She also denied that her common-law husband, a man named Louis Ford, might be responsible for her black eye, saying that he "has never beat me up." F.'s account of the encounter with the deputies was substantially the same as the testimony of Deputy Sweeny.
Monroe Griffin testified in his own defense. His version of the events of November 2 differ markedly from that of F.'s. Griffin stated that he first met D.F. at around 3:00 p.m. on November 2 while he was shopping at a liquor store. At that time F. invited Griffin to meet her at Edna Davis' house that night. Later that evening as Griffin was driving up to Edna Davis' house he observed F. on her way to the liquor store, and offered her a ride in his car.
The two went to the liquor store and, after some rather suggestive conversation, Griffin recommended that they check into a motel room and D.F. agreed. They checked into the Baker Motel on Highway 49 (an establishment which was well known as a flop house), paying $10.00 for three hours in the room. Griffin testified that they checked in sometime between 7:00 and 7:30 p.m. and that once in the motel room the two engaged in conversation, F. took a shower, and they engaged in intercourse.
Soon thereafter, the two became aware that their three hour rental of the room was about to expire. Rather than pay an additional $10.00, they decided to check out of the motel room and return to Davis' house. Griffin stated that, while in the motel room, he noticed that F.'s lip was injured and she told him that her "old man", Louis Ford, was responsible. After stopping for gas while returning to Davis' house, the two decided to find a secluded spot and return to their romantic endeavors. Griffin testified that he paid F. $10.00 to perform oral sex on him. While she was so engaged, however, Griffin insulted F. by referring to her as "bitch". F. responded by squeezing his penis and testicles and, in an effort to free himself, Griffin began to strike her about the face. He then instructed F. to get out of his car and get home the best way that she could.
The two reconciled, however, and immediately returned to their amorous activity. Griffin stated that at no time during the roadside encounter did he penetrate D.F. At that moment Griffin became aware of the presence of another car, although he was unaware that it was a sheriff's patrol vehicle. Griffin stated that he placed the car in "drive" in an effort to frighten away the occupants of the other car, but, owing to his contorted position laying across the front seat, he was unable to maintain control and the station wagon plunged into the ditch.

B.
In January, 1985, Griffin was formally charged with the crime of rape in an indictment returned by the Hinds County Grand *447 Jury. The case was called for trial in Circuit Court on November 12, 1986. At the conclusion of the trial, the jury returned a verdict of "guilty as charged" and fixed Griffin's punishment at life imprisonment. From this verdict and sentence, Griffin appeals.

III.
The outcome determinative question is whether the Circuit Court erred when it refused Griffin's request that the jury be instructed that it had the option of finding him guilty only of simple assault.
Griffin offered such a lesser offense instruction.[1] The Court refused it saying "I believe the offense in this case is consent to the sexual offense and it's not a proper instruction."
Griffin charges that it was error to refuse the simple assault instruction, because "taking the evidence in the light most favorable to the accused," the jury could reasonably have found that all Griffin did to D.F. was to assault her. The point is of consequence, as assault carries a maximum penalty of a $500.00 fine, or six months imprisonment, or both. Miss. Code Ann. § 97-3-7(1) (Supp. 1988).
A lesser-included offense instruction should only be granted if there is an evidentiary basis therefor in the record. Ruffin v. State, 444 So.2d 839, 840 (Miss. 1984). The test has been fleshed out in Harper v. State, 478 So.2d 1017 (Miss. 1985):
[A] lesser included offense instruction should be granted unless the trial judge  and ultimately this Court  can say, taking the evidence in the light most favorable to the accused, and considering all reasonable favorable inferences which may be drawn in favor of the accused from the evidence, that no reasonable jury could find the defendant guilty of the lesser included offense (and conversely not guilty of at least one essential element of the principal charge).
Harper, 478 So.2d at 1021; see also Lee v. State, 469 So.2d 1225, 1230-31 (Miss. 1985); and Fairchild v. State, 459 So.2d 793, 801 (Miss. 1984).
Section 97-3-7(1) provides that one "is guilty of simple assault if he attempts to cause or purposely, knowingly or recklessly causes bodily injury to another; ..." This Court has recognized that instructions based upon this statute are appropriate in cases of attempted rape, if with foundation in the evidence. Armstead v. State, 503 So.2d 281, 285 (Miss. 1987), In the Interest of R.T., 520 So.2d 136, 137 (Miss. 1988).
The prosecution argues, however, that simple assault can never be a lesser included offense where penetration is achieved and admitted and where the defense is consent. Penetration subsumes any preliminary assault and renders the accused either guilty of rape or not guilty on the consent theory, or so the argument goes. The symmetry of the point is superficially appealing, but it founders on the facts of this case.
The evidence presented before the Court, taken in a light most favorable to Griffin's theory of the case, supports the instruction he requested. Griffin admitted at trial that he had engaged in sexual intercourse with D.F. earlier that evening; only that all was consensual. Nor did he deny that at some point during that night he became enraged and struck F. a number of times. He further stated that, while in the car, penetration did not take place. The testimony of Deputy Sweeny, moreover, does little to contradict Griffin's version of events. The Deputy testified that he witnessed Griffin striking the prosecutrix D.F.  actions which amount to no more than simple assault. The deputy offered nothing inconsistent with Griffin's assault theory or corroborating the prosecution's charge of rape.
Whether simple assault is formally a lesser included offense to rape is not the point. We have before us a continuing *448 factual scenario bracketed by a relatively brief period of time on the evening of November 2, 1985. The facts suggest that Griffin may have been guilty of at least two possible courses of criminal conduct: rape and simple assault, the latter carrying a maximum penalty far less than the former. As the jury may on these facts reasonably have found Griffin guilty of simple assault but not guilty of rape  without any inconsistency in evidentiary or ultimate findings, it follows that Griffin was of right entitled to have the jury instructed on the lesser offense of simple assault.[2] Because the Circuit Court refused that instruction, and because of the enormous disparity in maximum punishments between rape and simple assault, we find the error of reversible proportions.

IV.
We have predicated our reversal on the preceding issue concerning the failure of the court below to instruct on the lesser offense of assault. There is another point presented on appeal which requires comment. We refer to the conduct of the prosecuting attorney in the context of the appearance of the witness, John Smith, at trial.
There was considerable confusion surrounding Smith's testimony. The defense had originally subpoenaed Smith; however, after he had shown up drunk for court, the defense released him. The prosecution then issued a subpoena instanter and called Smith on rebuttal. Smith admitted that he had been drinking prior to coming to court that day as well.
Smith testified that he had been with Griffin most of the day on November 2, 1985 and he did not see D.F. at all that day. He stated that he became heavily intoxicated and that Griffin drove Smith and his brother-in-law home sometime around mid-night that night. On cross-examination Smith admitted that his memory is not too sharp and that he was not sure about the time.
Smith also testified that he visited Monroe Griffin in the jail on Sunday, November 3. At that time Griffin recounted to Smith much the same story that he presented at trial, to-wit: that he had spent the prior evening at a motel room with D.F. and that he had been arrested while continuing his romantic endeavors with F. on a deserted road. Smith also testified that he was familiar with F. and that her husband, Louis Ford, beat her often.
At trial, when the defense had decided it would not call Smith, the prosecution was given an opportunity to interview him, although Smith was hardly cooperative. Once the prosecution rested, Griffin's attorney then discharged Smith, telling him that he could go home. After Griffin's direct examination, the prosecuting attorney requested the Court to issue a subpoena instanter to compel Smith to testify. Then during Griffin's cross-examination the prosecuting attorney posed numerous questions relating to Smith's absence. Consider the following sample.
Q: And this is the same person you had subpoenaed up here yesterday as your witness, is that right?
A: Right.
Q: Do you know where he is now?
A: No, I don't.
Q: You had him subpoenaed up here yesterday?
BY MR. REEVES: Objection, your Honor. That's the fourth time he's asked that same question.
BY THE COURT: Sustained.
BY MR. PETERS, Continuing:
Q: And you  do you intend to call him now?
BY MR. REEVES: Objection, your Honor. That's irrelevant. If we call him, we call him.
BY THE COURT: Sustained.
BY MR. PETERS, Continuing:
Q: Well, do you know where he is right now?
*449 All in all, there are seven references to the defendant's subpoena of John Smith during Griffin's cross-examination.
Smith, of course, was called by the prosecution in rebuttal. In closing argument, the prosecuting attorney had a good bit to say about him:
But the little smooth, cool, calm and collected came all rough, hot and unwound and uncollected when John Smith came down here pursuant to their subpoena and the Judge ordered him to talk to us. And he didn't want to, and they certainly didn't want him to, because we had to resubpoena him today to get him back down here. He was gone when we looked up today. And we found that out at noon and fortunately a deputy got out there and got him and brought him back down here for you people ... Do you think there's a reason that John Smith just wasn't here this morning when we came back to court? You think there's a reason we had to resubpoena his witness back down here? Because he was with the guy all day long and, no, he never did see this victim all day long... . He was painfully truthful. You bet he was painful. That's why they told him to go home. That's why we had to subpoena him back down here. Not our friend. We're not the ones who talked to him and brought him down here. Not our witness.

We announce no novel principle when we state that "the failure of either party to examine a witness equally accessible to both is not a proper subject for comment before a jury by either of the parties." Phillips v. State, 183 So.2d 908, 911 (Miss. 1966) (quoting Brown v. State, 200 Miss. 811, 27 So.2d 838 (1946)). Because of the high potential for prejudice to the accused, this rule has been strictly enforced in criminal cases. Madlock v. State, 440 So.2d 315, 318 (Miss. 1983); Morgan v. State, 388 So.2d 495 (Miss. 1980); but see Smith v. State, 187 Miss. 96, 192 So. 436 (1939). Additionally, this Court has not been hesitant to reverse when such comments are joined by other unrelated sources of prejudice to the defendant. Collins v. State, 408 So.2d 1376, 1379 (Miss. 1982). The prosecuting attorney's comments on John Smith fall squarely within this prohibition and were wholly out of line, a matter of which all should take note.
REVERSED AND REMANDED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, SULLIVAN, ANDERSON, GRIFFIN and ZUCCARO, JJ., concur.
NOTES
[1] Instruction D-7, which was refused by the Court, read:

The Court instructs the Jury that the Jury may return a verdict of the lesser-included offense of simple assault if the Jury finds that the Defendant attempted to cause or purposely, knowingly, or recklessly caused bodily injury to another.
[2] Any possible concern that simple assault, because technically not a lesser included offense, is not within the indictment for rape dissipates in the face of Griffin's request for the simple assault instruction. Griffin thus waived any inadequacy in the indictment.