# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2007-KA-02130-SCT

*STEPHEN JOSEPH DELASHMIT*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/27/2007 |
| TRIAL JUDGE: | HON. THOMAS J. GARDNER, III |
| COURT FROM WHICH APPEALED: | LEE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | MISSISSIPPI OFFICE OF INDIGENT APPEALS BY: GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: LA DONNA C. HOLLAND |
| DISTRICT ATTORNEY: | JOHN RICHARD YOUNG |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 10/09/2008 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, P.J., EASLEY AND CARLSON, JJ.**

**CARLSON, JUSTICE, FOR THE COURT:**

¶1.     Stephen Joseph Delashmit was tried and convicted by a jury in the Circuit Court of Lee County for the crime of enticement of a child for sexual purposes. *See* Miss. Code Ann. § 97-5-33 (Rev. 2006).[1] Delashmit was sentenced as a habitual offender to a term of life imprisonment without parole in the custody of the Mississippi Department of Corrections

---

[1]This statute was amended by the Legislature during the 2007 session (Miss. Laws 2007, ch. 376, § 1, eff. from and after July 1, 2007), but this amendment is not applicable to today's case.

pursuant to Mississippi Code Annotated Section 99-19-83 (Rev. 2007). After his post-trial motions were denied by the trial judge, Delashmit appealed to us. Finding no error, we affirm the Lee County Circuit Court's judgment of conviction and sentence.

## FACTS AND PROCEEDINGS IN THE TRIAL COURT

¶2. On October 24, 2006, Corey Mallory drove past Lee Memorial Cemetery in Verona after leaving work. He observed a little girl pushing a bicycle and then noticed a blue Nissan car quickly pull up beside her. Mallory thought the encounter appeared suspicious, so he turned around to check on the little girl to ensure her safety. He saw the bicycle lying in the cemetery, but the little girl was by then gone. Mallory became alarmed and followed the blue car, and he eventually pulled up beside the car and questioned the driver, who later was identified as Stephen Delashmit. Mallory inquired about the little girl, and Delashmit initially replied that he did not know what Mallory was talking about. Delashmit pulled off, but Mallory continued to follow him and called 911 to report the incident.

¶3. Sergeant Robbie Gwin of the Lee County Sheriff's Department was dispatched to Lee Memorial Cemetery in Verona regarding a possible child abduction. When Sergeant Gwin arrived at the scene, he saw a little girl's bicycle on the ground. A woman arrived on the scene and identified the bicycle as belonging to her eight-year-old daughter, V.B.[2] Shortly, V.B. returned to the scene with an adult woman and told officers what had transpired. V.B. stated that she had stopped to fix the chain on her bicycle when she noticed a blue car pass

---

[2]Due to the sensitive nature of this case, the identity of the minor child will not be revealed.

2

by two or three times. The driver of the car pulled up beside her and asked for directions. The driver then asked V.B. to get in the car with him, and he offered her fifty dollars to have sex with him. The man already had his pants unzipped and showed the little girl his "middle spot" or genital area. V.B. became scared and ran to her brother's friend's house, leaving her bicycle in the cemetery.

¶4. After leaving the scene, Sergeant Gwin and other officers began looking for the suspect, who Mallory and V.B. described as a white male wearing glasses and a baseball cap and driving a small blue Nissan car. Gwin received a telephone call from Lee County Deputy Sheriff Phillip Smith, who was with Deputy Gary Turner, and they advised Gwin that they were familiar with an individual, Stephen Delashmit, who matched the description of the suspect and could possibly be a registered sex offender. The investigation led Sergeant Gwin to the Industrial Park at Hickory Springs where Delashmit worked. He saw Delashmit's vehicle in the parking lot, and this vehicle matched the description previously obtained. A supervisor located Delashmit, and Gwin asked him to step outside to speak with him in the parking lot. Gwin advised Delashmit of his *Miranda* rights and informed him why law enforcement wished to speak with him at that time. Gwin then waited for Lee County Sheriff Jimmy Howell Johnson to arrive. *Miranda v. Ariz.*, 384 U.S. 436, 86 S. Ct. 1602, 16 L.ED. 2d 694 (1966).

¶5. After arriving at the scene, Sheriff Johnson approached Delashmit and ensured that he had been read his *Miranda* rights and fully understood them. Due to weather conditions and their location in a workplace parking lot, Johnson asked Delashmit to speak with him in

3

the back seat of a patrol car. Once inside the car, Johnson personally re-read Delashmit his *Miranda* rights. Delashmit admitted that he had offered the little girl, V.B., fifty dollars for sex and had shown her his penis. Delashmit was then placed under arrest and transported to the Lee County jail.

¶6.     At the jail, Donna Franks, an officer assigned to the Criminal Investigation Division of the Lee County Sheriff's Department, again advised Delashmit of his *Miranda* rights, and Delashmit executed a waiver-of-rights form. Delashmit again confessed to Investigator Franks that he had offered V.B. fifty dollars to have sex with him and demonstrated how he had shown her his penis.

¶7.     Following a grand-jury indictment, Stephen Delashmit went to trial on November 26, 2007, in the Circuit Court of Lee County, Judge Thomas J. Gardner, III, presiding. After the jury returned a verdict finding Delashmit guilty of the crime of having enticed, induced or solicited V.B., an eight-year-old child, for the purpose of engaging in sexually explicit conduct, Judge Gardner sentenced Delashmit as a habitual offender to a term of life imprisonment without parole in the custody of the Mississippi Department of Corrections pursuant to Mississippi Code Annotated Section 99-19-83 (Rev. 2007). After Judge Gardner denied his motion for judgment notwithstanding the verdict, or, in the alternative, for a new trial, Delashmit perfected this appeal to this Court.

## DISCUSSION

¶8.     Delashmit presents three issues for us to consider: (1) whether Delashmit's statements to law enforcement officials were properly admitted; (2) whether Delashmit was entitled to

4

a lesser-offense instruction; and (3) whether Delashmit's counsel was unconstitutionally prevented from making a closing argument regarding reasonable doubt. We restate these issues for the sake of today's discussion.

## I. WHETHER DELASHMIT'S STATEMENTS TO LAW ENFORCEMENT OFFICIALS WERE PROPERLY ADMITTED.

¶9. The standard of review for admission of evidence is abuse of discretion. *Debrow v. State*, 972 So. 2d 550, 552 (Miss. 2007). However, when a question of law is raised, we apply a de novo standard of review. *Id*. "This Court will reverse a trial court's finding that a confession is admissible only when an incorrect legal standard was applied, manifest error was committed, or the decision is contrary to the overwhelming weight of the evidence." *Martin v. State*, 871 So. 2d 693, 701 (Miss. 2004) (citing *Duplantis v. State*, 644 So. 2d 1235, 1243 (Miss. 1994); *Willie v. State*, 585 So. 2d 660, 665 (Miss. 1991)).

¶10. Delashmit argues that his separate confessions to Sheriff Johnson and to Investigator Franks were improperly admitted. With regard to the confession to Sheriff Johnson, Delashmit argues that while he was under arrest, the arrest was without probable cause, so the statement to the sheriff was inadmissible as "fruit of the poisonous tree." He argues that the second statement also should not have been admitted, because it was made after he had invoked his right to counsel.

¶11. Delashmit was not under arrest at the time of his confession to Sheriff Johnson. "An arrest within the meaning of the criminal law is the taking into custody of another person by an officer or a private person for the purpose of holding him to answer for an alleged or

5

suspected crime. One who voluntarily accompanies an officer to a place where he may be interviewed is not under arrest." ***Dancer v. State***, 721 So. 2d 583, 586 (Miss. 1998)***; Blue v. State***, 674 So. 2d 1184, 1202 (Miss. 1996) (quoting ***Smith v. State***, 229 So. 2d 551, 556 (Miss. 1969)). Delashmit voluntarily got into the patrol car to speak with Sheriff Johnson. The sheriff testified at the suppression hearing that Delashmit was detained "based upon gathering information." Sheriff Johnson likewise testified that due to the weather conditions, "I asked [Delashmit] to sit in the back seat of the patrol car on the driver's side, *and I got in the back seat of the patrol car next to him on the passenger side*." (Emphasis added). Also, Sergeant Gwin testified that Delashmit was not under arrest at this time and was simply a suspect. Police officers have authority to detain a person for investigatory purposes without actually arresting the person. ***Williamson v. State***, 876 So. 2d 353, 355 (Miss. 2004) (citing ***Shannon v. State***, 739 So. 2d 468, 471 (Miss. Ct. App. 1999)).

¶12. Further, this Court likewise has stated that "[i]f [*the defendant*] wanted to claim his confession was a product of an illegal arrest, 'it [was] incumbent upon him to assert this defense at the hearing and to offer some evidence in support of it.'" ***Sills v. State***, 634 So. 2d 124, 125 (Miss.1994) (quoting ***Bevill v. State*** 556 So. 2d 699, 709 (Miss. 1990) (emphasis added)). This Court held that in failing to do this, the defendant, Sills, had abandoned this claim and had forfeited his right to argue at some subsequent time that the trial judge had erroneously admitted his statement into evidence because it was induced by an illegal arrest. *Id*. at 126. In the case *sub judice*, Delashmit also failed to argue that his confession was the result of an illegal arrest and argued only that it was involuntary; therefore, this argument is

6

barred. Procedural bar notwithstanding, Delashmit's argument fails on its merits for the reasons stated; therefore, the trial court did not err in allowing into evidence Delashmit's first statement to Sheriff Johnson.

¶13. Before Delashmit made his second confession, Investigator Franks read him his rights at the Lee County jail, and he signed a waiver-of-rights form. The following exchange took place between Delashmit and Investigator Franks:

| | |
|---|---|
| Franks: | This is a statement of your rights and you understand what your rights are? |
| Delashmit: | Yes, mam. |
| Franks: | You're willing to make a statement and answer questions without a lawyer present at this time? |
| Delashmit: | I prefer a lawyer. |
| Franks: | You prefer to have an attorney? |
| Delashmit: | Well . . . but I will . . . you know . . . I will go ahead. |
| Franks: | No. You have to tell me you're willing to talk to me. |
| Delashmit: | I'm willing to talk to you. |
| Franks: | Without an attorney at this time? |
| Delashmit: | Without an attorney. |
| Franks: | Okay. Do you understand and know what you're doing? |
| Delashmit: | Yes, mam. |
| Franks: | Are you on any kind of medication? |
| Delashmit: | Uh . . . not presently. |
| Franks: | Has there been any promises or threats made to you? |
| Delashmit: | No, mam, it hasn't. |
| Franks: | Again, I'm going to ask you . . . do you want an attorney at this time or do you want to talk to me? |
| Delashmit: | I want to talk to you. |
| Franks: | Okay. So, you've had your rights read to you and I need you to sign it right there. And you said you prefer to have an attorney, again, I want to emphasize . . . are you willing to talk to me without an attorney? |
| Delashmit: | Yes, mam. |
| Franks: | You changed your mind and said . . . you're willing to talk. |
| Delashmit: | I was . . . yeah, I will talk to you. |

Delashmit argues that the confession he made subsequent to this exchange was inadmissible because he had requested or invoked his right to counsel.

¶14.    When a suspect invokes his right to counsel, all interrogation must cease until the lawyer is present. *Grayson v. State*, 806 So. 2d 241, 247 (Miss. 2001) (citing *Edwards v. Arizona*, 451 U.S. 477, 484, 101 S. Ct. 1880, 68 L. Ed. 2d 378 (1981)). However, such an invocation must be unambiguous. "[A]n ambiguous mention of possibly speaking with one's attorney is insufficient to trigger the right to counsel." *Id*. (citing *Davis v. United States*, 512 U.S. 452, 459, 114 S. Ct. 2350, 129 L. Ed. 2d 362 (1994)). In *Davis*, the United States Supreme Court held that the statement, "[m]aybe I should talk to a lawyer," was insufficient to trigger the right to counsel. *Davis*, 512 U.S. at 462. A suspect must articulate his or her desire to have counsel present with sufficient clarity that a reasonable police officer under the circumstances would understand the statement to be a request for an attorney. *Id*. at 459.

¶15.    This Court likewise recently dealt with the issue of a similar ambiguous statement made by the suspect during a custodial investigation. In *Chamberlin v. State*, 2008 Miss. LEXIS 352 (July 17, 2008); *rehearing denied*, *Chamberlin v. State*, 2008 Miss. LEXIS 470 (Sept. 11, 2008), this Court set out the following facts from the record:

> Lyon [law enforcement officer] began by asking preliminary identification questions. Chamberlin [defendant] claims that about one minute into the interview she stated, "I won't tell you anything until I talk to a lawyer." The State contends that Chamberlin asked, "Is this where I'm supposed to ask for a lawyer," and later "Don't you think I need a lawyer?" The videotape of the interrogation shows that Chamberlin made an unintelligible statement, and Lyon immediately asked questions to clarify whether Chamberlin had invoked her right to counsel. Subsequently, Chamberlin clearly said, "I'll talk."

8

This first interview lasted about six minutes. Lyon testified that after he read Chamberlin her *Miranda* rights, she "checked [on a *Miranda* form] that she did not want to speak with [him]." The interview concluded at approximately 5:20 p.m.

*Chamberlin*, 2008 Miss. LEXIS 352, **12-13, ¶¶ 25-26. (footnote omitted).  In analyzing this issue, we stated:

> P39. A review of the video recording of the first interrogation shows that Lyon was in the midst of asking identification questions when Chamberlin, after spelling her last name, blurted out the unintelligible statement regarding an attorney. Lyon then ceased his series of identifying questions and asked Chamberlin a number of questions, pertaining only to whether she wanted an attorney. Eventually, Chamberlin said, "I'll talk." The trial court found that "her questions concerning an attorney were ambiguous as a matter of law and that investigators took all appropriate precautions to determine the nature and extent of the ambiguity, and that the defendant voluntarily and without coercion agreed to proceed and further answer questions." This Court agrees.
>
> P40. After the clarifying questions and Chamberlin's response that she would talk, Lyon advised Chamberlin of her *Miranda* rights, and she acknowledged that she understood. When Lyon asked Chamberlin "are you willing to answer questions now," Chamberlin shook her head "no," and Lyon ceased asking questions. Chamberlin's indication that she did not want to answer questions did not constitute an unambiguous request for counsel. Thus, at the end of the first interrogation, she successfully invoked her right to silence but not her right to counsel. This Court fnds, as the trial court did, that Chamberlin's *Miranda* rights were fully respected during the first interview.

*Chamberlin*, 2008 Miss. LEXIS 352, **20-22, ¶¶ 39-40 (citing *Davis v. United States*, 512 U.S. at 458-61).

¶16.    In today's case, Delashmit's statement of "I prefer a lawyer" was only an ambiguous mention of possibly speaking with an attorney.  Consistent with *Chamberlin*, we find that this statement was insufficient to invoke the right to counsel.  Clearly, a reasonable police officer would not understand  this statement alone to be an unequivocal assertion of the right

9

to counsel. Investigator Franks asked Delashmit numerous follow-up questions to ensure that his rights were protected. Delashmit answered, "I'm willing to talk to you" and "without an attorney." Investigator Franks thus was not required to cease her interrogation of Delashmit, and the trial court, therefore, did not err in allowing into evidence Delashmit's statement to Investigator Franks.

¶17. For the reasons stated, this first issue is without merit.

## II. WHETHER DELASHMIT WAS ENTITLED TO A LESSER-OFFENSE INSTRUCTION.

¶18. Delashmit argues that the jury should have been given a lesser-offense instruction on indecent exposure.[3] "[A] criminal defendant is entitled to have the jury instructed regarding any offense carrying a lesser punishment arising out of a common nucleus of operative fact with the scenario giving rise to the charge laid in the indictment." *Green v. State*, 884 So. 2d 733, 737 (Miss. 2004). *See also* *Griffin v. State*, 533 So. 2d 444 (Miss. 1988). However, a lesser-included-offense instruction, or a lesser-offense instruction, should be granted only if there is an evidentiary basis for such instruction in the record. *Griffin*, 533 So. 2d at 447.

---

[3] Mississippi Code Annotated Section 97-29-31 on indecent exposure states as follows:

> A person who willfully and lewdly exposes his person, or private parts thereof, in any public place, or in any place where others are present, or procures another to so expose himself, is guilty of a misdemeanor and, on conviction, shall be punished by a fine not exceeding Five Hundred Dollars ($500.00) or be imprisoned not exceeding six (6) months, or both. It is not a violation of this statute for a woman to breast-feed.

Miss. Code Ann. § 97-29-31 (Rev. 2006).

10

The test is ultimately whether "this Court – can say, taking the evidence in the light most favorable to the accused, and considering all reasonable favorable inferences which may be drawn in favor of the accused from the evidence, that no reasonable jury could find the defendant guilty of the lesser included offense (and conversely not guilty of at least one essential element of the principal charge)." *Id*. (citing *Harper v. State*, 478 So. 2d 1017, 1021 (Miss. 1985)).

¶19. Delashmit was not entitled to the lesser-offense instruction on misdemeanor indecent exposure. Based on the overwhelming evidence, no reasonable jury could have found Delashmit not guilty of any element of the principal charge. The victim, an eight-year-old girl, testified that Delashmit had offered her fifty dollars and had exposed his "middle spot" to her. Delashmit also confessed to both Sheriff Johnson and Investigator Franks that he had offered the child victim fifty dollars to have sex with him and had shown her his penis.

¶20. Therefore, for the reasons stated, this second issue is without merit.

### III. WHETHER DELASHMIT'S COUNSEL WAS UNCONSTITUTIONALLY PREVENTED FROM MAKING A CLOSING ARGUMENT REGARDING REASONABLE DOUBT.

¶21. Lastly, Delashmit contends that he suffered irreparable prejudice due to the trial court's limiting his closing arguments. Defense counsel made the following statements during closing arguments to the jury:

> Now, what is a reasonable doubt? Well, if you're thinking right now, "Why would he admit to everything when he was interviewed at the jail by Donna Franks? Why would he say all of this about what happened if he had some sort of intent to take the child off?" If you wonder about that, why would he do that, and you're doubting whether that means that he intended to do that, then

11

that is reasonable to you. And that could be a reasonable doubt. A doubt that you have about any of the evidence, about any of the "why did this happen" or "why did this event take that course," if you have a question in your mind about why, that's a doubt. And if you can put a reason on top of that –

At this point during defense counsel's closing argument, the following exchange occurred in open court:

Mr. Daniels: Objection to trying to define reasonable doubt to the jury, Your Honor.

The Court: Yes, sir. You cannot define, that, Counsel. It's for the jury to determine. All right, you may proceed.

Mr. Helmert: Your Honor, I –

The Court: Go ahead, but you can't tell them what it is. There's no definition to prove as to what reasonable doubt is.

Mr. Helmert: Your Honor, I'm not asking the Court to sanction what I'm – I'm not asking the Court to instruct that. I'm asking to argue on behalf of my client.

The Court: All right. Go ahead.

¶22. After defense counsel stated that he was only asking "to argue on behalf of [his] client," the trial court gave him the "go-ahead" to continue his argument. This Court has held that "distinctions between reasonable doubt, all possible doubt, beyond a shadow of a doubt, and the like, while, not properly the subject of jury instructions, are permissible during trial counsel's closing argument." *Christmas v. State*, 700 So. 2d 262, 269 (Miss. 1997) (quoting *Heidelberg v. State*, 584 So. 2d 393, 396 (Miss. 1991)). In the end, after the above exchange between the trial court and counsel, Delashmit was given this opportunity during closing arguments. However, defense counsel chose, for unknown reasons, to discontinue his argument with regard to reasonable doubt. From the cold record, we can only conclude that this was not trial-court error but rather a choice on the part of defense counsel.

12

Additionally, before the prosecutor objected to defense counsel's closing argument, Delashmit's counsel had several moments to give his opinion of what constituted a reasonable doubt, and the trial court did not instruct the jury to disregard these comments by defense counsel.

¶23. Further, even assuming *arguendo* that the aforementioned trial-court exchange was an impermissible prohibition against defense counsel's reasonable-doubt argument, the error was harmless. The test for harmless error is whether it appears "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." **Thomas v. State**, 711 So. 2d 867, 872 (Miss. 1998) (quoting **Yates v. Evatt**, 500 U.S. 391, 392, 114 L. Ed. 2d 432, 111 S. Ct. 1884 (1991)). Based on the overwhelming evidence of guilt in the record, this error, if any, had no effect on the ultimate outcome of this case. *See* **Kolberg v. State**, 829 So. 2d 29, 68 (Miss. 2002) (citing **Tanner v. State**, 764 So. 2d 385, 399-400 (Miss. 2000)).

¶24. Therefore, we find this issue to be likewise without merit.

## CONCLUSION

¶25. For the reasons stated, we affirm the Lee County Circuit Court's judgment of conviction entered against Stephen Delashmit consistent with the jury verdict finding Delashmit guilty of the crime of having enticed, induced, or solicited an eight-year-old child for the purpose of engaging in sexually explicit conduct, and the resulting life sentence as a section 99-19-83 habitual offender without the possibility of parole.

¶26. **COUNT II: CONVICTION OF ENTICEMENT OF A CHILD FOR SEXUAL PURPOSES AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF**

**THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AS A HABITUAL OFFENDER, WITHOUT THE POSSIBILITY OF PAROLE, AFFIRMED.**

**SMITH, C.J., WALLER AND DIAZ, P.JJ., EASLEY, DICKINSON, RANDOLPH AND LAMAR, JJ., CONCUR. GRAVES, J., CONCURS IN RESULT ONLY.**