# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-KA-00456-COA

JENNIFER LEE HOFFMAN A/K/A JENNIFER HOFFMAN

APPELLANT

v.

APPELLEE

STATE OF MISSISSIPPI

| | |
|---|---|
| DATE OF JUDGMENT: | 03/13/2014 |
| TRIAL JUDGE: | HON. JOSEPH H. LOPER JR. |
| COURT FROM WHICH APPEALED: | ATTALA COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: GEORGE T. HOLMES PHILLIP BROADHEAD |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: BARBARA WAKELAND BYRD |
| DISTRICT ATTORNEY: | DOUG EVANS |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF ARMED ROBBERY AND SENTENCED TO THREE YEARS IN THE CUSTODY OF MISSISSIPPI DEPARTMENT OF CORRECTIONS |
| DISPOSITION: | AFFIRMED - 04/12/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE IRVING, P.J., CARLTON AND JAMES, JJ.**

**JAMES, J., FOR THE COURT:**

¶1. Following a jury trial in the Circuit Court of Attala County, Mississippi, Jennifer Hoffman was convicted of armed robbery. Following a denial of Hoffman's motion for a judgment notwithstanding the verdict or, in the alternative, a new trial, Hoffman filed this appeal. We affirm Hoffman's conviction and sentence.

**FACTS**

¶2.     On Friday evening, August 16, 2013, Henry Hood and Hoffman met in Kosciusko, Mississippi, where Hood lived, to have sexual intercourse. Hood and Hoffman had met on Facebook through Kayla McDaniel, a mutual associate. Hood agreed to pay Hoffman $100 to have sex with him. Hoffman, a Louisiana resident, claimed she traveled to Mississippi on July 15, 2013, to visit for a couple of weeks. She testified that her ride from Attala County to get home had abandoned her. Since none of her friends or family were able to lend her money to buy a train ticket to return home, she accepted Hood's offer.

¶3.     Hoffman followed Hood to his brother's old house in a suburban owned by McDaniel's boyfriend, Shawn Despres. They attempted to go in the house, but Hood did not have keys to unlock the door. They decided to have sex in the suburban. Unbeknown to Hood, McDaniel, Despres, and Clarence Windom were hiding in the back of the suburban. According to Hoffman, the group offered to go with her because she did not know her way around Kosciusko. Hood testified that he sat in the passenger seat of the suburban, and as soon as Hoffman climbed on top of him, Windom jumped up, wrapped his arm around Hood's neck, and held a knife to Hood's throat. Hood stated that Hoffman did not say anything during the robbery. Hood testified that Hoffman instead went to his vehicle, looked through his belongings, and stole his cell phone.

¶4.     According to Hoffman and Windom, McDaniel went through Hood's vehicle. Hoffman stated that after Windom jumped out and grabbed Hood, she got out the suburban and went around to the driver's side. Hoffman claimed she had no idea the group intended

2

to rob Hood and was in complete shock when the incident occurred.

¶5.    Despres got out of the suburban and took Hood's belt off of him and wrapped it around Hood's legs. Despres also took cash and a wallet out of Hood's pocket. Hood stated that Hoffman wore a black dress, the guy who took his wallet wore a mask, and the other guy was black with dreads. In all, $580, the wallet, and the cell phone were stolen from Hood. After they finished robbing Hood, the group got in the suburban and drove away. Hood went to a friend's house and called the local sheriff's office. He told them that he had been robbed, but failed to disclose the reason why he and Hoffman had met. He did disclose that detail later. Also, Hood initially told officers that a gun and a knife had been used during the robbery, but he later testified that only a knife was used.

¶6.    The sheriff's office issued a "be on the lookout" call for the suburban based on Hood's description of the vehicle. J.W. Jenkins, a Carthage police officer, heard the call and stopped the suburban. Hoffman, Despres, Windom, McDaniel, and Quenton Hall were in the suburban. Officer Jenkins asked the occupants for their driver's licenses. There was an active warrant for McDaniel, so Officer Jenkins arrested her and transported her to the Leake County Jail. The other occupants of the car were turned over to deputies from Attala County and taken into custody.

¶7.    The sheriff's office had the suburban towed to the department, and an officer searched the truck, after receiving consent from Despres to do so. The officer found $100 stuffed into a cigarette pack lying on the passenger seat, a black mask lying on the first row of back seats, a black dress lying on the floorboard of the second row of back seats, and an orange hoody

3

lying on the floorboard of the second row of  back seats.  The officer also found an empty cell-phone case and a knife in the passenger-side-door pocket.  Money was also recovered from the suspects. The officer recovered $104 from Windom, $108 from Despres, $20 from Hoffman, and $100 from McDaniel.  A total of $432 was recovered from the suspects and the vehicle.

¶8.      After Hoffman was arrested, Hoffman was warned of her *Miranda* rights[1] and signed a waiver of those rights, and provided a statement that was written down by a law-enforcement officer.  While giving that statement, not only did Hoffman not tell officers about the deal she had made with Hood, she also fabricated an account of what happened. She told law-enforcement officers that, at 11 p.m. on the night in question, she went with Windom, Despres, and McDaniel to pick up Hall, and they headed to McDonald's in Carthage.  However, while they were en route, the police surrounded them in Despres's Suburban.  She stated that they did stop at a convenience store to buy beer and cigarettes that night, but that they never went to Kosciusko.  She denied knowing anything about a robbery and claimed that she was not involved in a robbery.

***The Trial***

¶9.      Hoffman was indicted for armed robbery on March 13, 2014, and she was tried by a jury in Attala County.  The State's case included testimony from codefendants McDaniel, Despres, and Windom.  Their testimony about the robbery corroborated what Hood had testified to, with some variations.

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

***Despres's Testimony***

¶10.    Despres testified Hoffman set up the arrangement with Hood to have sex for money, and afterward, she told Despres there was another way she could get more money.  Despres testified that he wore a Texas-longhorn hoody with a mask, and Windom had taken his shirt off and put it over his head.  Despres testified that he took $80 from Hood's pocket, and that $500 was in Hood's wallet.  After the robbery, the group stopped at a store in Dossville, Mississippi, to get beer and cigarettes.  Despres kept $100 for himself and told McDaniel to hold another $100 for him so that he would not spend it.  He spent $50 out of the stolen cash in Carthage for gas.  Despres testified that Hoffman and Windom each had $100.  Despres explained that someone threw out the wallet along with Hood's cell phone while they were driving down Highway 35.  As they were pulling out of the gas station in Carthage, the police pulled them over.  After the officers arrested the group, Despres wrote a letter to Hoffman in which he stated he was sorry for giving a statement against her and that it was all a lie.  At trial Despres testfied that he only wrote the letter to find out what Hoffman had said against him.

***McDaniel's Testimony***

¶11.    McDaniel testified that she and Hood were friends from school, and Hood and Hoffman met through Facebook because of her.  She testified that she knew about Hoffman and Hood's arrangement to exchange sex for money because she read their text-message conversation.  She testified that she initially did not know about the plan to rob Hood.  Nevertheless, at some point while they were following Hood, it became apparent to her that

the group had planned to rob him, and that Hoffman was in on the plan. McDaniel said she did not participate in the robbery. She said she only got out of the suburban during the robbery to change seats and she did not see what Hoffman did during that time.

***Windom's Testimony***

¶12. Windom testified that he was present on the day of the robbery, but said he could not remember what happened. The trial court granted the State permission to treat him as a hostile witness, and the State read Windom's statements from his plea hearing into the record. Windom's statements at the plea hearing closely resembled Hoffman's testimony. For example, Windom said Despres got out of the car and took the items from Hood, and McDaniel, not Hoffman, went to Hood's car. Windom testified that Hoffman remained on the driver's side of the truck until the incident was over. He also testified that he did not know whose idea the robbery was. The State then called law-enforcement witnesses to testify regarding the arrest, search of the vehicle, and photo lineup.

***Hoffman's Testimony***

¶13. Hoffman admitted that she arranged to have sex with Hood in exchange for $100, but she testified that she had no idea about the plan to rob Hood, and claimed that, if she had known, she never would have gone to Kosciusko. She claimed that the only reason that Despres and Windom were with her was to protect her, in case something went wrong with Hood, and to take her to the train station afterwards. She testified that she did not see Windom use a knife during the robbery. But she did state, "if he says he did, then he did." She testified that, after the robbery, Windom tried to give her some of the money, but she

6

turned it down. Also, after the robbery, the group stopped and bought beer. Then, the group wanted weed, so they picked up Quentin Hall, Hoffman's ex-boyfriend, so he could buy it for them. Hoffman's initial statement after the group was arrested was admitted into evidence at trial. At trial, Hoffman testified that she lied in her pretrial statement because she was embarrassed, but she refused to sign the statement because she knew it was not true.

¶14. After hearing and considering all the evidence that was presented, the jury found Hoffman guilty of armed robbery. The trial court sentenced her to serve a three years in the custody of the Mississippi Department of Corrections. Hoffman filed a timely notice of appeal.[2]

## DISCUSSION

### I. Whether the trial court erred when it allowed the State to present evidence of Hoffman's prior inconsistent statement.

¶15. "The standard of review regarding the admission or exclusion of evidence is abuse of discretion." *Al-Fatah v. State*, 916 So. 2d 584, 591 (¶21) (Miss. Ct. App. 2005) (citation omitted). If such error occurs,we will only reverse when the abuse of discretion has resulted in prejudice to the accused. *Moss v. State*, 977 So. 2d 1201, 1207 (¶4) (Miss. Ct. App. 2007).

¶16. Hoffman contends that the trial court erred in allowing the State to present evidence of her prior inconsistent statement in violation of Mississippi Rules of Evidence 613 and

---

[2] Hoffman moved to have law students at the University of Mississippi School of Law Criminal Appeals Clinic work on her appeal under the direction of the supervising professor/attorney Phillip Broadhead, as attorney of record. This Court granted the motion, and Karen Brindisi and George Dekle III were appointed as special counsel pursuant to Mississippi Code Annotated section 73-3-207 (Rev. 2012). Brindisi and Dekle assisted in the preparation of Hoffman's brief.

801(d)(2). Hoffman argues that the impeachment was complete when she effectively admitted on direct examination that she lied to police officers and admitted during the suppression hearing that her oral statement to the investigators was not true. Additionally, Hoffman argues that the State failed to establish the foundation necessary for the admission of extrinsic evidence. And this includes confronting Hoffman with her statement and providing Hoffman with an opportunity to explain or deny it. The State argues that this issue is procedurally barred because Hoffman's statement was admitted at trial without objection.

¶17. At trial, Hoffman sought to exclude her pretrial statement but did so on the ground that it was not voluntarily given. The trial court held a suppression hearing and determined that Hoffman had given the statement voluntarily. Hoffman did not object on the grounds that the statement was unnecessary for impeachment or that the procedure in admitting the statement was not correct. Moreover, Hoffman made no objection when the statement was finally admitted. Hoffman also failed to raise this issue in her motion for a new trial.

¶18. "It is well-settled law that the failure to make a contemporaneous objection waives the right of raising the issue on appeal." *Lang v. State*, 931 So. 2d 689, 691 (¶11) (Miss. Ct. App. 2006) (citing *Ballenger v. State*, 667 So. 2d 1242, 1259 (Miss. 1995)); *see Ross v. State*, 954 So. 2d 968, 987 (¶¶27-30) (Miss. 2007); *Hayes v. State*, 801 So. 2d 806, 810 (¶¶9-12) (Miss. Ct. App. 2001). We cannot find error unless the issue was raised before the trial court. *Hunt v. State*, 81 So. 3d 1141, 1143 (¶5) (Miss. Ct. App. 2011).

¶19. This issue was not before the trial court, and we consequently have no choice but to find that this is not a proper issue for this Court to consider on appeal.

**II.** **Whether the trial court erred in denying Hoffman's motion for a JNOV, or, alternatively, her motion for a new trial.**

¶20. Hoffman was convicted of armed robbery under Mississippi Code Annotated section 97-3-79 (Rev. 2014). In order to establish that Hoffman committed armed robbery, the State was required to prove: (1) a felonious taking or attempt to take, (2) from the person or from the presence, (3) the personal property of another, (4) against his will, (5) by the person or by putting such person in fear of immediate injury to his person by the exhibiting of a deadly weapon. *Id*. Hoffman challenges the sufficiency of the evidence and the weight of the evidence. We will address these challenges separately.

**A.** **Whether the evidence presented was sufficient to sustain a conviction.**

¶21. A motion for a directed verdict tests the legal sufficiency of the evidence. *Solanki v. Ervin*, 21 So. 3d 552, 556 (¶8) (Miss. 2008). The Mississippi Supreme Court has stated that "the relevant question is whether after viewing the evidence in the light most favorable to the prosecution any rational trier of fact could have found essential elements of the crime beyond a reasonable doubt." *Bush v. State*, 895 So. 2d 836, 843 (¶16) (Miss. 2005) (citing *Jackson v. Virginia*, 443 U.S. 307, 315 (1979)) (internal quotations omitted). The court further explained:

> Should the facts and inferences considered in a challenge to the sufficiency of the evidence "point in favor of the defendant on any element of the offense with sufficient force that reasonable [jurors] could not have found beyond a reasonable doubt that the defendant was guilty," the proper remedy is for the appellate court to reverse and render. However, if a review of the evidence reveals that it is of such quality and weight that, "having in mind the beyond a reasonable doubt burden of proof standard, reasonable fair-minded [jurors] in the exercise of impartial judgment might reach different conclusions on

9

every element of the offense," the evidence will be deemed to have been sufficient.

*Id*. (internal citations omitted).

¶22. Hoffman argues that the jury could not have found her guilty of armed robbery because (1) there was no definitive proof that a deadly weapon was used; (2) her codefendants' testimony regarding her intent and involvement in the robbery was skeptical, and (3) the State did not prove that she intended to rob Hood.

¶23. The State, however, did provide sufficient evidence to support the jury's verdict. Hood testified that when Hoffman got into his lap, a man sitting in the back seat jumped up, wrapped his arm around his neck, and pulled a knife. Although Hood initially stated that two different weapons were used, he consistently maintained that a weapon had been used. Furthermore, Despres, Windom, and McDaniel all testified that a knife was used.

¶24. As to Hoffman's argument about the credibility of her codefendants' testimonies, our law is clear "the jury will be the sole judge of the credibility of witnesses and the weight and worth of their testimony. . . . [Moreover, our courts] have repeatedly held that in a criminal prosecution the jury may accept the testimony of some witnesses and reject that of others . . . ." *Gathright v. State*, 380 So. 2d 1276, 1278 (Miss. 1980). Lastly, sufficient evidence was presented to show that Hoffman intended to participate in the robbery. The codefendants testified that it was Hoffman's idea to rob Hood, and Hood identified Hoffman as the person who stole his cell phone. Therefore, for the foregoing reasons, we find that this issue is without merit.

**B.     Whether the verdict was against the overwhelming**

**weight of the evidence.**

¶25. A motion for a new trial challenges the weight of the evidence. *Bush,* 895 So. 2d at 844 (¶18). This Court "will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Id.* (citation omitted). On appeal, "the power to grant a new trial should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict." *Id.* "The evidence should be weighed in a light most favorable to the verdict." *Id.*

¶26. As discussed above, the State provided plenty of evidence of armed robbery, and the jury's verdict does not present an "unconscionable injustice." The jury heard testimony from the victim and other evidence that supported his allegations. The jury also heard the testimony of Investigator Steven Teague, who stated that the $100 that was found in the suburban was not attributed to any of the suspects. Despres and Windom testified that Hoffman received $100 from the robbery, thus establishing that Hoffman participated in the robbery.

¶27. A "jury is entitled to believe or disbelieve" witnesses as it sees fit. *Moore v. State*, 969 So. 2d 153, 156 (¶11) (Miss. Ct. App. 2007). Thus, the jury was entitled to disbelieve Hoffman's testimony in which she denied planning the robbery and participating. The jury chose to believe the testimony of the codefendants and other evidence that supported Hood's allegations. The trial court did not abuse its discretion in denying a new trial because the evidence presented does not preponderate so heavily against the verdict that allowing it to stand would constitute an unconscionable injustice. This issue is without merit.

11

**III.** **Whether the trial court abused its discretion when it denied Hoffman's request to instruct the jury on the lesser-nonincluded offense of prostitution.**

¶28. Lastly, Hoffman contends that the trial court erred in denying her jury instruction for the lesser-nonincluded offense of prostitution. The trial court did not abuse its discretion when it denied the requested lesser-nonincluded-offense jury instruction. Based on the supreme court's holding in *Hye v. State*, 162 So. 3d 750, 753 (¶4) (Miss. 2015), Hoffman was not entitled to instruct the jury about a crime that was not charged by the State.

¶29. In *Hye*, the Mississippi Supreme Court expressly overruled *Griffin v. State*, 533 So. 2d 444 (Miss. 1988), and prior precedent that had provided that a defendant "may request an instruction regarding any offense carrying a lesser punishment if the lesser offense arises out of a continuing factual scenario giving rise to the charge laid in the indictment." *Hye*, 162 So. 3d at 754 (¶9). The court also found that it was not bound by stare decisis to apply that precedent to Hye's case, because departure from precedent was "necessary to avoid the perpetuation of pernicious error." *Id*. at 755 (¶11) (citation omitted). The court found that the *Griffin* rule would "interfer[e] with the role accorded to the State alone, the responsibility to determine charges." *Id*. at 758 (¶26) (citation omitted). Likewise in the instant case, Hoffman was not entitled to the lesser-nonincluded-offense instruction on prostitution. Accordingly, this issue is without merit.

## CONCLUSION

¶30. For the above reasons, Hoffman's conviction of armed robbery and sentence are affirmed.

12

¶31. **THE JUDGMENT OF THE ATTALA COUNTY CIRCUIT COURT OF CONVICTION OF ARMED ROBBERY AND SENTENCE OF THREE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO ATTALA COUNTY.**

    **LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, CARLTON, FAIR, WILSON AND GREENLEE, JJ., CONCUR. BARNES, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**