797 So.2d 372 (2001)
Roger Lee WILLIAMS, Jr., Appellant
v.
STATE of Mississippi, Appellee.
No. 1999-KA-01161-COA.
Court of Appeals of Mississippi.
June 26, 2001.
Certiorari Denied October 18, 2001.
*374 Jack R. Jones III, Southaven, for Appellant.
Office of the Attorney General by Dewitt T. Allred, III, for Appellee.
EN BANC.

MODIFIED OPINION

MOTION FOR REHEARING
LEE, J., for the Court as to Issues I and II:
¶ 1. The State's motion for rehearing as to Issue III in this matter is denied, however, its motion for modification of opinion is granted to the extent reflected in this opinion. The original opinion issued in this case is withdrawn, and the following opinion is substituted as the opinion of this Court.
¶ 2. In March of 1999, Roger Lee Williams, Jr. was indicted under Miss. Code Ann. § 97-3-7(1)(a)(Rev.1999) in the Circuit Court of DeSoto County for four counts of simple assault on four law enforcement officers. The case was tried before a jury which found Williams guilty of Count I of disorderly conduct, guilty of Count II of simple assault, and not guilty of Count IV of simple assault. Count III was dismissed on motion of the State at the close of its case. The court sentenced Williams to zero days jail time and zero days suspended time for disorderly conduct as to Count I, and to a term of five years imprisonment as to Count II. Williams asserts as errors the trial court's denial of his motions for a directed verdict and JNOV and the State's cross-examination of a witness in regard to the length of his sentence for a prior conviction. In addition, the State asserts that the court had no jurisdiction as to the allegation of disorderly conduct in Count I and moves that the judgment of conviction and sentence for that count be reversed.
¶ 3. After a thorough review of the record, we find that the trial court committed no error in the issues asserted by Williams and affirms as to those issues.

FACTS
¶ 4. This case presents a situation we encounter all too often: differing versions of the facts. The altercation giving rise to the charges against Williams occurred on December 23, 1998, in the early afternoon at the jail where Williams was housed as a prisoner.
*375 ¶ 5. According to the State's witnesses, the chief jailer had asked Deputy Jailer Ivie Powell and Sergeant Charles Mayo to take Williams from his cell to her desk so that she could talk to him. When Williams got to her desk he used abusive language toward her, and she ordered that he be taken back to his cell. When he got back to his cell, Williams slung the cell door toward Powell, shutting it on his hand. Powell sprayed Williams with mace while Mayo locked the door with a padlock. Powell sought medical treatment for the injury to his hand.
¶ 6. Detective Lieutenant Tommy Burks was called to investigate this incident but was unable to interview Williams because Williams was irate. Later that afternoon Burks, Captain Keith Combes, and Chief Deputy Charles Brown met with Williams to discuss a complaint Williams had made. When Williams said he had no respect for the officers and made vulgar remarks to them, Combes instructed Brown to take Williams back to his cell. Brown grabbed Williams by the arm to take him back to his cell and Williams snatched it away from him. Williams began using profanity and said, "I'm not going f______ anywhere." Combes then sprayed Williams with Freeze Plus P, and Williams began fighting Combes and Brown. Williams grabbed Burks, hit him with his fist, tried to gouge his eye with his thumb, and rubbed the Freeze Plus P in Burks's face. Other officers got Williams loose from Burks. Burks was treated for a lacerated eye socket and other injuries. Thereafter, his sinuses bled for two weeks.
¶ 7. Williams testified that Powell's hand was not caught in the door of the cell and that Powell sprayed him in the face with mace after he had been locked in his cell. He said he was being reasonable when Combes took him from his cell to the detectives's area to make his complaint when Combes ordered him to be taken back to his cell and sprayed him with mace. Williams argues that he was merely trying to shield himself from the spray and that, being shackled, it is illogical that he would have intentionally assaulted officers surrounding him. He said the scuffle only lasted a few seconds and that he was thrown to the floor by three deputies who grabbed him simultaneously. He claims the officers overreacted to his frustration caused by his efforts to talk with the chief deputy.

I. DID THE TRIAL COURT ERR IN DENYING THE MOTIONS CHALLENGING THE LEGAL SUFFICIENCY OF THE EVIDENCE?
¶ 8. Williams asserts that the trial court erred in denying his motions for a directed verdict and JNOV. In assessing the legal sufficiency of the evidence on a motion for a directed verdict or a motion for JNOV, the trial judge is required to accept as true all of the evidence that is favorable to the State, including all reasonable inferences that may be drawn therefrom, and to disregard evidence favorable to the defendant. Yates v. State, 685 So.2d 715, 718 (Miss.1996); Ellis v. State, 667 So.2d 599, 612 (Miss.1995); Noe v. State, 616 So.2d 298, 302 (Miss.1993); Clemons v. State, 460 So.2d 835, 839 (Miss.1984). If under this standard sufficient evidence to support the jury's verdict of guilty exists, the motion should be overruled. Brown v. State, 556 So.2d 338, 340 (Miss.1990); Butler v. State, 544 So.2d 816, 819 (Miss.1989). A finding that the evidence is insufficient results in a discharge of the defendant. May v. State, 460 So.2d 778, 781 (Miss. 1984).
¶ 9. Count II of the indictment alleged that Williams purposely and knowingly caused bodily injury to Tommy Burks, a law enforcement officer acting within the scope of his duty, by striking *376 him in the face. The testimony of Burks alone, if believed by the jury, was sufficient to establish the charges made in Count II of the indictment. The testimony was corroborated with that of Combes and Brown. We thus find that the standard of review to which we are bound is met and find no merit to this assignment of error.

II. DID THE TRIAL COURT ERR IN PERMITTING THE STATE TO INQUIRE INTO THE FACT OF A CONVICTION AND LENGTH OF SENTENCE ON CROSS-EXAMINATION OF A DEFENSE WITNESS?
¶ 10. Eddie Shorty, a defense witness, was serving a term of thirty years imprisonment without parole. The State advised the court that it intended to impeach Shorty by showing that he had been convicted of a crime punishable by imprisonment in excess of one year and the facts of his sentence.
¶ 11. The State was permitted to establish only that Shorty was in the DeSoto County jail waiting for transport by the State and that he was serving a sentence of thirty years without parole. Under M.R.E. 609(a)(1), the impeachment value lies in the fact that Shorty was convicted of a crime that is punishable by a year or more, subject to the determination by the court that the probative value of admitting this evidence outweighs its prejudicial effect. Because the trial judge restricted the State from showing that Shorty's conviction was for a violent crime, the weighing of the probative value and prejudicial effect of the conviction of the crime itself was never implicated. It was not Shorty's conviction of the crime that the trial court permitted to impeach his credibility. The court permitted his credibility to be impeached by the fact that he had a thirty year prison sentence and the inference that he had nothing to lose by lying as a witness. Thus the trial court actually should have addressed the ordinary relevance test under M.R.E. 403, rather than M.R.E. 609, to determine whether the probative value of Shorty's sentence, with its inferences, is substantially outweighed by the danger of unfair prejudice.
¶ 12. Our standard of reviewing the cross-examination of a witness regarding bias and interest was set forth in Johnson v. State, 756 So.2d 4(¶ 8) (Miss.Ct.App. 1999), which states that the scope of such cross-examination is ordinarily broad. However, the extent of cross-examination is within the sound discretion of the trial court, but its ruling will be reversed when an abuse of that discretion is shown. Id. The fact that Shorty was serving the equivalent of a life term without parole and would have nothing to lose if he should be convicted of perjury was both relevant and probative as to his credibility and bias. In addition, the likelihood of any unfair prejudice to Williams was slight, since there was no evidence presented to show that Shorty was associated in any criminal activity, or otherwise, with Williams. Shorty was called as a witness simply because he was in the jail at the time of the incident and was a witness to it. We find that the trial court did not abuse its discretion and reached the correct result, regardless of whether its reasoning followed the balancing required in Rule 609 rather than that in Rule 403, and affirm as to this issue. In reviewing a trial court's ruling, an appellate court should affirm if the correct result was reached regardless of the approach used in its reasoning. Carter v. State, 167 Miss. 331, 342, 145 So. 739, 742 (1933).
¶ 13. The point should be made that had the ruling been erroneous, any error was cured by the verdict. The central factual issue to which Shorty testified was whether Williams injured Powell by *377 slamming the cell door on his hand. The jury decided in Williams's favor and consistently with Shorty's testimony on this issue, absolving Williams for Count I. Where there is error which has been cured by the verdict, there is no reversal. Davis v. State, 611 So.2d 906, 913 (Miss.1992).
¶ 14. Williams contends that this rule is inapplicable because the verdict of guilty in Count II may have been influenced by the jury's belief that Williams was associated with someone serving a lengthy sentence. We disagree. Williams was found guilty of simple assault for Count II where the evidence was compelling. The jury found Williams not guilty of two of the other assault charges, the State having dismissed the other charge. We therefore do not believe that the jury was influenced by the admission of this testimony.
IRVING, J., for the Court as to Issue III:

III. SHOULD THE JUDGMENT OF CONVICTION AND SENTENCE FOR COUNT I OF DISORDERLY CONDUCT BE REVERSED?
¶ 15. This case is unusual in that the State, not the appellant, asks this Court to reverse and render Williams's conviction of disorderly conduct. The basis of the State's request is that Miss.Code Ann. § 99-19-5 (Rev.2000) permits a jury to be instructed on a non-indicted lesser-included offense but does not permit a jury to be instructed on a non-indicted lesser offense. Hence, according to the State, the trial court lacked jurisdiction over the lesser offense charge because no indictment or information had been returned against Williams for that charge. While Williams seeks a reversal of his conviction on this charge, he does so on the basis of the sufficiency of the evidence, not on the basis that Miss.Code Ann. § 99-19-5 (Rev.2000) prohibits the instruction which allowed the jury to find him guilty.
¶ 16. Further, it is interesting to note that, according to the record, the State did not join in Williams's post-trial motion for a JNOV, nor did it move, before the trial court, for a dismissal of the count I disorderly conduct conviction. It did move at the close of the case to dismiss count III of the indictment. I know of nothing that would have prevented the State from moving to dismiss count I or from joining Williams's JNOV motion on the ground which the State asserts here.
¶ 17. The record reflects the following discussion between the court, Ms. Brewer, the prosecutor, and Mr. Jones, Williams's defense counsel, prior to the court's decision to give the lesser offense instruction:
BY MS. BREWER: Mr. Jones has asked for a lesser included offense instruction on disorderly conduct. And for the purpose of jury instruction looking at it in the light most favorable to the Defense as far as what proof was, I understand there could be a lesser charge on the first incident because he was told not to slam the hand, and he did it anyway.
BY MR. JONES: Right, but it goes to all of the incidences.
BY THE COURT: What is your position? He can't get it on the other two?
BY MS. BREWER: No, sir. I think he can get it on the slam the door or whatever when he was told not to.
¶ 18. Count I was the count involving the slamming of the door. This was the count for which the jury found Williams guilty of disorderly conduct. It seems pretty clear to us that the State agreed that Williams was entitled to a lesser offense instruction as to count I. The State has not appealed the granting of the lesser offense instruction as to count II even *378 though the trial court, over the State's objection, allowed a lesser offense instruction as to count II as well. Thus, it appears to me that there is a serious question as to whether the State can prosecute an appeal here regarding the granting of the lesser offense instruction on count I since it agreed to the granting of the instruction as to that count. Mississippi Code Annotated § 99-35-103 (Rev.2000) states in pertinent part:
The State or any municipal corporation may prosecute an appeal from a judgment of the circuit court in a criminal cause in the following cases:
(b) From a judgment actually acquitting the defendant where a question of law has been decided adversely to the state or municipality; but in such case the appeal shall not subject the defendant to further prosecution, nor shall the judgment of acquittal be reversed, but the Supreme Court shall nevertheless decide the question of law presented.
(c) From a ruling adverse to the state or municipality in every case which the defendant is convicted and prosecutes an appeal; and the case shall be treated as if a cross appeal had been formally presented by the state. All questions of law thus presented shall be decided by the Supreme Court.
¶ 19. In the present posture of things, there is simply no ruling adverse to the State that is still viable and before this Court. While consideration of count II is before this Court on a sufficiency argument, there is no cross-appeal by the State. The State's brief makes that clear. The State's brief is entitled: Brief for Appellee and Motion for Reversal and Discharge in Count I. Assuming arguendo that the State has a viable appeal, we now turn to further discussion of the issue.
¶ 20. The State correctly points out that Williams was not indicted for disorderly conduct, and the offense of disorderly conduct is not a lesser-included offense of simple assault. Williams's defense, however, was that he was not attempting to assault Officer Powell but was merely reacting to the mace that had been visited upon him. He then reasoned that the most he could be guilty of was disorderly conduct and sought an instruction to that effect. The trial court granted the instruction, and in our opinion, rightfully so. It is well-settled law that a criminal defendant is entitled to an instruction which supports his theory of the case. See Murphy v. State, 566 So.2d 1201, 1206 (Miss.1990). Also, a defendant has a constitutional right to a fair trial. That right necessarily embraces his right to have his theory of defense presented to the jury and to have the jury properly instructed on the law regarding that defense. Any statutory impediment to this constitutional right must yield.
¶ 21. Murrell v. State, 655 So.2d 881, 886 (Miss.1995) and Mease v. State, 539 So.2d 1324, 1329 (Miss.1989) both hold that a defendant is entitled to a lesser offense instruction for the non-indicted lesser offense if it arises out of a common nucleus of operative facts as the charge brought in the indictment. See also Griffin v. State, 533 So.2d 444 (Miss.1988).
¶ 22. While Williams argues that the evidence is insufficient to sustain his conviction, it is our understanding from the record that the State's position at trial was that the evidence was sufficient to convict Williams of simple assault but conceded that Williams may have been entitled to the lesser offense instruction. In this appeal, the State still does not take issue with the sufficiency of the evidence to support the conviction, and we find Williams's contentions in this regard wholly *379 without support. There is considerable evidence to support the jury's determination that he was guilty of disorderly conduct. Accordingly, we affirm the judgement of conviction for disorderly conduct.
¶ 23. It seems to us that this case highlights two competing interests: a defendant's right to have the jury instructed on his theory of defense and the State's interest in prohibiting the jury from returning what the State perceives as being a compromised verdict in cases where the evidence might be insufficient to support the greater charge but sufficient to support a lesser offense which is not a lesser-included offense of the greater charge. As between these two competing interests, it is clear the defendant should prevail.
¶ 24. The concurring opinion seems to argue that the instruction should not have been given because of the impossibility of knowing whether giving the instruction would increase or reduce the risk of finding Williams guilty of the greater offense. That has never been the basis for granting an instruction. Instructions should be granted or refused based on whether there is any evidence to support the requested instruction. A judge can never know beforehand how a jury will react to the instructions, and that is the way it should be. If prior scienter of the jury's reaction to a given instruction was a prerequisite to granting instructions, none would ever be granted, for it is impossible to predict with any decree of accuracy how a jury will react in any given case. But more importantly, if knowledge of how a jury may react to a given instruction was the determinative factor for allowing or not allowing instructions, and if that knowledge could be obtained, the constitutional right to a fair trial would cease, for all a court need do is allow the instructions which would garner the desired result.
¶ 25. For the reasons discussed, we hold that the trial court did not err in granting the instruction, and Williams's assertion that the evidence was insufficient to support his conviction of disorderly conduct is without merit.
¶ 26. THE JUDGMENT OF THE DESOTO COUNTY CIRCUIT COURT OF CONVICTION OF COUNT I OF DISORDERLY CONDUCT AND SENTENCE OF ZERO DAYS JAIL TIME AND ZERO DAYS SUSPENDED TIME; COUNT II OF SIMPLE ASSAULT ON A LAW ENFORCEMENT OFFICER AND SENTENCE OF FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO DESOTO COUNTY.
KING, P.J., PAYNE, BRIDGES, THOMAS, IRVING and MYERS, JJ., concur.
SOUTHWICK, P.J., concurs with a separate written opinion joined by McMILLIN, C.J.
CHANDLER, J., not participating.
SOUTHWICK, P.J., concurring.
¶ 27. The majority finds that the impeachment of a defense witness by proof that he was then serving a long prison sentence was proper. I disagree, but I also find that the admission was harmless error.
¶ 28. The witness was named Eddie Shorty. He was a witness to relevant events because he had been incarcerated in the DeSoto County jail awaiting transport to the state prison. The State wished to introduce evidence that Shorty had been convicted of a specific violent crime that demonstrated disregard for the rights of others. The record does not identify the *380 crime since the trial court concluded that the important consideration was not the crime, but only that the witness was about to begin serving a thirty-year sentence at the state prison. The judge found the thirty-year sentence probative because "he's got nothing to lose by getting up here and telling a lie...."
¶ 29. I agree that there was no application here of the evidentiary rule that permits impeachment of a witness with proof of conviction of certain kinds of crimes. M.R.E. 609. It is not the fact that the witness has been convicted that is relevant under Rule 609, but it is the nature of the crime that is significant. This point is made clear by the fact that prior convictions of such crimes as testifying falsely under oath are automatically admissible. M.R.E. 609(a) & cmt. Other kinds of crimes must be shown to have "impeachment value." Peterson v. State, 518 So.2d 632, 636 (Miss.1987).
¶ 30. The Supreme Court quite recently overruled a line of precedents that it found were requiring that the crime itself involve some element of deception. White v. State, 1998-CT-01099-SCT, 785 So.2d 1059 (¶¶ 5 & 6) (Miss.2001) (only issue is that probative value of the offense must outweigh prejudice). Just what this change means may take some time to develop, but at least it does not announce that merely proving the witness is a felon is now sufficient. The Rule states that evidence of a prior conviction may be admissible "for the purpose of attacking the credibility of a witness...." M.R.E. 609(a). The prior crime presumably will still have to be revealed so that the fact-finder can decide that crime's impact on credibility. Demonstrating only that the witness is serving a long sentence does not give any indication of the kind of crime committed. Therefore, Rule 609 was not the door for admitting the evidence against Shorty.
¶ 31. What the trial judge concluded is that the mere fact that the witness would be incarcerated for thirty years regardless of what he said in this trial meant that the normal threat of a perjury conviction had little impact on his temptation to lie. That is plausible enough, but I find that the State also had to show that the witness would have had some temptation to lie. Already serving a long sentence, or being inflicted with some imminently terminal disease, or otherwise being less affected by the penalties for perjury is not by itself relevant impeachment. Had it been shown as a threshold matter that the witness and the defendant were colleagues in crime, friends, relatives, or had some other connection that would cause the witness to desire helping the defendant, then a potential weakness in the threat of a perjury conviction might have been pertinent. Instead, the evidence is that the witness and the accused had no prior connection.
¶ 32. The evidentiary rules permit a challenge to a witness's credibility based on "bias, prejudice, or interest of the witness for or against any party" in the trial. M.R.E. 616. If the witness's bias in favor of the accused had been demonstrated, then also showing jurors that a perjury conviction was potentially not an effective deterrent could have been relevant. Perhaps the court believed that all prisoners tend to support other prisoners against the State and would tend to lie if that can be done without penalty. If that is a permissible predicate, it has not been argued or supported here.
¶ 33. Only relevant evidence is admissible. That is defined as evidence which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." M.R.E. 401. The credibility of a witness is always relevant. M.R.E. *381 607 & 608. However, the evidence in question here was not of the witness's character for truthfulness. Instead, it revealed that one of the normal inhibitors for perjury was not as powerful as it might otherwise be.
¶ 34. Since no reason for the witness to lie was ever shown, the potentially weak deterrence threat of a perjury conviction is irrelevant. To use the terminology of the majority's focus on Rule 403, there was no "probative value" to the information that the witness was already serving a thirty year sentence. Rule 403 is just a balancing test for evidence that must first be shown to be relevant. This was not relevant. Had the nature of the crime been examined under Rule 609, perhaps the witness could have been impeached by proof of the crime itself. That issue was never reached.
¶ 35. Nonetheless, I find the error to have been harmless. Once the jurors heard the length of Shorty's sentence, that likely would have caused them to believe that he had been convicted of a significant crime and not of something minor or even perhaps was just awaiting trial. Still, Shorty was only one of four inmates who testified for the defense and who told the same story. The fact that they were all inmates at the jail was explained to the jury. Even though Shorty had his credibility undermined to some extent, improperly in my view, that did not affect the credibility of the other inmates. The jurors did not accept this defendant's version of events, a decision that I cannot find would have turned on this impeachment. I would affirm despite this error.
McMILLIN, C.J., joins this separate opinion.